BUZBY v. KEYSTONE OIL & MFG. CO.

(District Court, N. D. Illinois, E. D. July 14, 1913.)

No. 30,823.

TRADE-MARKS AND TRADE-NAMES (§ 59*)—INFRINGEMENT—INJUNCTION.

Complainant engaged in manufacturing lubricating grease, adopting the trade-name "Keystone Lubricating Company," and as a trade-mark the symbol of the keystone of an arch, to be used in marking its packages, the word "Keystone" being used in connection, and its grease became known as "Keystone grease." *Held* that, confusion resulting, and the public being misled to buy defendant's lubricating grease, from its using the word "Keystone" in its corporate name, "Keystone Oil & Manufacturing Company," and to indicate its product, it should be enjoined from using that word in that part of its business.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. § 59.*]

In Equity. Suit by Augustus C. Buzby, doing business as the Keystone Lubricating Company, against the Keystone Oil & Manufacturing Company. Decree for complainant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Culver, Andrews & King, of Chicago, Ill., for complainant.
Parker & Carter, of Chicago, Ill., for defendant.

SANBORN, District Judge. This is a bill for infringement of a trade-mark, and for unfair competition. It appears that complainant began doing business in 1885 or 1886, manufacturing lubricating greases; that he adopted the trade-name "Keystone Lubricating Company" at that time; and that he registered a trade-mark, being the symbol of the keystone of an arch, its essential feature being the representation of a keystone, to be used for attaching to the cans or packages of grease which he manufactured and sold, the word "Keystone" being used in every connection. It further appears that the business grew from year to year, and that through extensive advertising by means of circulars and catalogues, and through steady and long-continued advertising in trade journals, and particularly through advertising by means of sending free a sample of the grease, with an engineer's cap and a grease cup for the purpose of introducing it, the grease became widely known, and the name "Keystone grease" became in time to be known as the grease which was manufactured by the Keystone Lubricating Company.

From about 1890 until 1901 the complainant worked the Chicago territory by sending traveling men here to stay for a few days up to two weeks at a time, calling upon the local trade; and during those years it appears that he had worked up and had established a substantial trade in the Chicago territory. The Keystone Lubricating Company had advertised Keystone grease in the National Engineer, a Chicago publication, as far back as 1894, and about the year 1901 the business had apparently grown sufficiently in this locality to justify the establishment of an office in Chicago. A permanent office was accordingly established and maintained in Chicago from 1901 or 1902 on, down to this date.

It further appears that the grease manufactured by the complainant, and known as "Keystone grease," is the highest priced grease on the market, and that it is sold and used in every state in the Union, and in practically every country in the world, and that the extensive and steady advertising which has been done by the complainant, and the quality of the grease itself, has resulted in a steady increase of his gross sales from year to year.

Defendant was incorporated in the year 1900, but did no business whatever in lubricating greases until the year 1903. From that time on until 1911 its activities in lubricating oils and greases were very limited, its business being confined almost entirely to the sale of gasoline and light oils.

The only infringment of the complainant's trade-mark, if any, consists in the use of the word "Keystone" in the defendant's corporate name, and in the fact that it is claimed that the public has been deceived by such similarity, in that the defendant's lubricating grease has been purchased on several occasions by persons believing they were buying the complainant's brand. The cans in which the complainant and defendant sold their goods are radically different. The color, lettering, and descriptive matter are wholly distinct, as well as the odor

of the grease itself. The defendant denies any intention to deceive in the use of the word "Keystone" in its corporate name, and claims that the fraud alleged in the bill in that respect has not been proved.

It appears from the evidence that after the bill was filed the John Lauson Manufacturing Company, of New Holstein, Wis., which had been a customer of complainant for a considerable time, ordered from defendant four 25-pound pails of No. 3 Keystone grease. The order was filled in cans marked with the defendant's name, describing the contents of each can as "Banana grease." The purchasing agent and engineer of the Lauson Company had used the complainant's Keystone grease, and it appears it was the intention of the purchaser to buy such grease, and not that of defendant. Another instance of confusion appears in the testimony. The witness Kliver, who keeps a garage in Chicago, bought defendant's grease, believing it to be complainant's brand, and subsequently one of complainant's salesmen solicited his order for lubricating grease, and shortly thereafter was informed by Kliver that he had bought some grease from complainant, when as a matter of fact he was referring to that which he had purchased from defendant. It is clear that Kliver supposed he was buying complainant's brand. Another instance of confusion is that of the Hibbard, Spencer & Bartlett order. The government advertised for bids upon lubricating Keystone genuine grease. The Hibbard firm, who are jobbers, telephoned to the defendant, supposing they were the manufacturers of the genuine Keystone grease, referred to in the bids. The purchasing agent asked defendant's agent over the telephone if they handled the genuine Keystone grease, and he was assured that they did. The Hibbard firm thereupon put in a bid and got the order, but the grease was rejected, as not being genuine Keystone grease. These are the only instances shown in the testimony that any one was deceived into buying defendant's product supposing it to be that of complainant.

The questions presented are whether the complainant's trade-mark is a valid one, whether the word "Keystone" has obtained a secondary meaning, so that the words "Keystone grease" have come to be known to mean the article made by complainant, and whether fraud has been sufficiently established. No direct proof of any fraudulent intent has been adduced, but it is insisted by complainant that the similarity of name tends to deceive the public, and that the instances above referred to show that fraud is actually being perpetrated upon the public.

The same complainant prosecuted an infringement suit in the Eighth circuit, the case being reported under the name of Buzby v. Davis, 150 Fed. 275, 80 C. C. A. 163, 10 Ann. Cas. 68. It was there held that the complainant's trade-mark is valid as such. The court say:

"The arbitrary symbol of the keystone of an arch is not a geographical term. It is the proper subject of exclusive appropriation as a trade-mark, and it was so under the common law before the state of Pennsylvania came into existence."

Of course, the general rule is fairly established that words which do not themselves indicate the origin, manufacture, or ownership of the goods, but are merely descriptive of the place where the article

is made or produced, cannot be monopolized as a trade-mark. Elgin National Watch Co. v. Illinois Watch Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365. It is thought that the Davis Case states the proper rule of law applicable to this case.

The complainant having a valid trade-mark, the defendant had no right to use the word "Keystone" in its corporate name, so far as the sale of lubricating grease by it is concerned, if the public is thereby misled. The instances cited show that the similarity of name causes confusion and mistake, and are thought to be sufficient to justify the claim of fraud made by the bill. Defendant does not infringe the trade-mark by marking his goods, but by using the same name to indicate its product. Confusion and mistake result, and this is sufficient to entitle the complainant to the relief prayed.

Defendant should incorporate its lubricating grease business under some other name, or adopt some other plan to avoid infringement.